UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
DERRICK DIAZ,

        *Petitioner*,

     v.

UNITED STATES OF AMERICA,

        *Respondent*.
---------------------------------X

**MEMORANDUM & ORDER**

14-CV-7016 (KAM)

**KIYO A. MATSUMOTO, United States District Judge**

      On November 18, 2013, this Court sentenced Derrick Diaz ("Mr. Diaz") to 240 months of imprisonment and three years of supervised release after Mr. Diaz pleaded guilty to conspiracy to commit Hobbs Act robbery, 18 U.S.C. § 1951(a), pursuant to a plea agreement with the United States of America (the "Government"). (*See* Case No. 10-cr-277, ECF No. 253, Judgment.)  Presently before the Court are Mr. Diaz's petition and amended petition to vacate his sentence pursuant to 28 U.S.C. § 2255 ("Section 2255").  For the reasons set forth below, Mr. Diaz's petitions are procedurally deficient, and without merit.  Accordingly, both petitions are DENIED.

## Background

      Through an investigation, the Government learned that Mr. Diaz was part of a "crew" that regularly committed home-

1

invasion robberies.  (ECF No. 11,[1] Government's Opposition to Petition ("Opp."), at 1.)  The home-invasion robbery crew was involved in dozens of robberies in the south Brooklyn area between December 2007 and January 2010.  (*Id.*)  During several home-invasion robberies, the crew brandished firearms and used cutting and other sharp instruments to threaten residents.  (*Id.* at 2.)  Several of the crew's victims were physically confined, restrained, threatened, or harmed.  (*Id.*)

## I.    The Indictments and Plea Negotiations

Mr. Diaz was first indicted on April 8th, 2010.  (10-cr-277, ECF. No. 15, Indictment.)  Following the indictment, Mr. Diaz retained Tony Mirvis, Esq. ("Mr. Mirvis"), who engaged in plea negotiations with the Government.  On or around October 13, 2010, the Government provided Mr. Mirvis an unsigned, undated draft plea agreement.  (ECF No. 6, Declaration of Tony Mirvis, Esq. ("Mirvis Decl."), at ¶ 3.; *see* ECF No. 13, Declaration of former AUSA Justin Lerer ("Lerer Decl."), Exhibit A.)  The draft plea agreement provided that Mr. Diaz would waive indictment and plead guilty to a superseding information charging a violation of 18 U.S.C. § 1951(a), and the Government would not bring further charges against Mr. Diaz.  (*See generally* Lerer Decl.,

---

[1] Throughout this Memorandum and Order, citations to the docket in Mr. Diaz's criminal case include the case number 10-cr-277.  Citations that do not include that case number are citations to the docket in this action for habeas relief.

Exhibit A.)  The draft plea agreement estimated an adjusted offense level of 31 under the United States Sentencing Guidelines (the "Guidelines"), carrying a range of imprisonment of 188 to 235 months, assuming that Mr. Diaz was to be sentenced based on a criminal history category of VI.  (*Id*. at 2.)  In response to Mr. Diaz's petition, Mr. Mirvis affirmed that he reviewed the draft plea with Mr. Diaz, and that they discussed the terms and conditions, the Guidelines range, and the benefits and consequences of accepting or rejecting the plea.  (Mirvis Decl. ¶¶ 4-5.)  Mr. Mirvis also affirmed that Mr. Diaz was not interested in accepting the plea offer unless he could limit "his exposure in the five-year range."  (*Id.* ¶ 6.)  Mr. Diaz was arraigned on second and third superseding indictments on October 15 and December 10, 2010, respectively.  (10-cr-277, ECF Nos. 39, 48.)  Months of continued plea negotiations followed.

In July 2011, Mr. Diaz was arraigned on a fourth superseding indictment, which contained four counts.  (10-cr-277, ECF No. 97, Superseding Indictment (S-4), at 1.)  Count One charged Mr. Diaz with conspiracy to commit Hobbs Act robbery; specifically, to rob John Doe and unnamed drug traffickers of United States currency and other property owned by, and associated with, a business in New York between December 2007 and January 2010.  (*Id*.)  Count Two charged Mr. Diaz with conspiracy to rob John Doe of United States currency and other

property owned by, and associated with, a business in New York on December 22, 2009.  (*Id.*)  Counts Three and Four charged Mr. Diaz with conspiracy to commit interstate transportation of stolen property between December 2007 and January 2010, and interstate transportation of property on December 22, 2009, respectively.  (*Id.*)  Pre-trial motions ensued.

On September 19, 2011, the Court held a *Curcio* hearing, after the Government advised that there could be a potential conflict of interest between Mr. Diaz and Mr. Mirvis, due to their participation in two proffer sessions with the Government.[2]  (10-cr-277, Minute Entry, Sept. 19, 2011.)  At the hearing, Mr. Diaz relieved Mr. Mirvis and requested that the court appoint Thomas Nooter, Esq. ("Mr. Nooter") to represent him.  (*Id.*)  The Court did so.  (*See* 10-cr-277, ECF No. 131.) Due to the appointment of new counsel, the Court adjourned Mr. Diaz's trial, scheduled for October 2011, to February 21, 2012. (10-cr-277, ECF No. 146, Second Amended Criminal Pretrial Scheduling Order.)  In preparation for trial, Mr. Nooter, on behalf of Mr. Diaz, submitted proposed jury instructions and *voir dire* requests.  (10-cr-277, ECF. Nos. 167, 170, 171.)

---

[2] In *United States v. Curcio*, the Second Circuit held that trial courts must hold a hearing to alert a defendant to potential or actual conflicts in the representation by an attorney, and to allow a defendant to knowingly and voluntarily waive the potential or actual conflict, or to seek new counsel. 680 F.2d 881, 889-90 (2d Cir. 1982).  The Government explained that if Mr. Diaz testified at trial, the Government could call Mr. Mirvis to testify about Mr. Diaz's statements during the proffer sessions.

Further, Mr. Diaz filed a motion *in limine* on February 9, 2012. (10-cr-277, ECF No. 184.)

With trial approaching, on February 10, 2012, Mr. Diaz pleaded guilty to Count One of the fourth superseding indictment, charging conspiracy to commit Hobbs Act robbery, 18 U.S.C. § 1951(a). (*See generally* 10-cr-277, ECF No. 188, Plea Proceeding Transcript ("Pl. Tr.").) The plea agreement estimated Mr. Diaz would face an estimated range of imprisonment of 324-405 months of imprisonment, assuming that Mr. Diaz was within criminal history category V. (10-cr-277, ECF No. 228-1, Exhibit 1, Plea Agreement, at 3.) The effective Guidelines range was 240 months of imprisonment, because 240 months was the statutory maximum. (*Id.*)

By entering the plea agreement, Mr. Diaz "agree[d] not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court impose[d] a term of imprisonment of 240 months or below." (*Id.* at 3-4.) Mr. Diaz signed the plea agreement under a paragraph that stated: "I have read the entire agreement and discussed it with my attorney. I understand all of its terms and am entering into it knowingly and voluntarily." (*Id.* at 6.)

On the same day Mr. Diaz entered into the plea agreement, he appeared for a plea hearing before this Court.

(*See generally* Pl. Tr.)  After taking an oath, Mr. Diaz
represented to the Court that he had received a copy of the
indictment and understood the charges pending against him, which
he had discussed with his attorney.  (*Id.* at 6.)  He also
represented that he was satisfied with Mr. Nooter's
representation.  (*Id.*)  Mr. Diaz further represented that he
discussed the plea agreement with counsel, that he understood
the terms of the plea agreement, his rights, the consequences of
his plea, that he signed the plea agreement, that his plea was
voluntary and knowing, and that no one made any promises to him
about the sentence he would receive.  (*Id.* at 10, 18.)

     Mr. Diaz acknowledged that, as set forth in the plea
agreement, he faced an estimated advisory Guidelines range of
324 to 405 months of imprisonment, capped at a statutory maximum
of 240 months of imprisonment.  (*Id.* at 14.)  Further, Mr. Diaz
stated that he understood that by entering into the plea
agreement, he waived his right to "appeal or otherwise challenge
[his] conviction or [his] sentence if [the Court] imposed a
sentence that is 240 months or less. . ."  (*Id.* at 15.)

     Mr. Diaz allocuted to his conduct in connection with
Count One.  Specifically, Mr. Diaz stated that he entered into
an agreement with others to rob individuals of property by use
of force and threats of force between December 2007 and January
2010, including, but not limited to, drug dealers in Brooklyn,

and that during a home-invasion robbery in December 2009, two children and a nanny were confined to a bathroom during the robbery. (*Id.* at 18-25.) The Court found that Mr. Diaz was "acting voluntarily, that [he] fully underst[ood] [his] rights and the consequences of [his] plea and that there [was] a factual basis for [his] plea." (*Id.* at 25.) This Court thus accepted Mr. Diaz's plea of guilty to Count One in the fourth superseding indictment. (*Id.*)

## II.  The Sentence

The Probation Department prepared a Pre-Sentence Investigation Report ("PSR") in advance of sentencing. The PSR calculated an estimated offense level of 34, lower than the plea agreement's estimated total adjusted offense level of 37, and a criminal history category of VI. (ECF No. 12-9, Transcript of November 18, 2013 Sentencing ("Sent. Tr."), at 21.)

On November 18, 2013, Mr. Diaz appeared before this Court for sentencing. Early in the proceeding, Mr. Diaz raised for the first time (including with counsel) "a *Lafler* issue"[3] regarding his first attorney, Mr. Mirvis, and stated, without specifics, that if Mr. Mirvis had "advise[d] [him] correctly when all of this started," "[he] would have copped out to the complaint way before, like [he] wanted to . . . ." (*Id.* at 5.)

---

[3] *See generally Lafler v. Cooper*, 566 U.S. 156 (2012).

The Court assured Mr. Diaz that delays resulting from his requested hearings and lengthy plea negotiations would not adversely affect his sentence, and that the Government would decide whether to move for a reduction for accepting responsibility.  (*Id.*)  The Government responded that the plea agreement was "a seriously-negotiated disposition," and that Mr. Diaz avoided "a potential superseding indictment to an additional consecutive mandatory minimum for gun counts" by accepting the plea agreement.  (*Id.* at 7.)

Further, again without advance notice to the Court or counsel, Mr. Diaz also stated that, based on a Fourth Circuit case, *United States v. Simmons*,[4] the "Government's not allowed to take a case that's a nonviolent case in the state and bring it into the federal government and use it as an overt act . . . ." (*Id.* at 7-8.)  The Court invited the Government and defense counsel to respond.  (*Id.* at 8.)  The Government responded that it "ha[d] no information about that case, but the concept that [Mr. Diaz] appear[ed] to be elucidating [did not] apply in this case."  (*Id.*)  Defense counsel similarly indicated that he was not aware of the case.  (*Id.*)  The Court stated that it did not

---

[4] In S*immons*, the Fourth Circuit held that a defendant's prior state conviction for non-aggravated, first-time marijuana possession and facts outside the record could not be coupled to create hypothetical aggravating factors to calculate defendant's maximum punishment under the Controlled Substances Act.  649 F.3d 237, 244-45 (4th Cir. 2011).

have knowledge of the case cited by Mr. Diaz, and that Fourth
Circuit law was not controlling.  (*Id.*)

This Court then turned to imposition of the sentence
and proceeded to review the Guidelines calculations and
sentencing factors under 18 U.S.C. § 3553(a).  The Court
reviewed Mr. Diaz's prior convictions, articulating the relevant
criminal history points received the Guidelines.  U.S.S.G. §
4A1.2.  This Court found that Mr. Diaz's "total criminal history
points based on the foregoing [wa]s nine, and in addition,
because Mr. Diaz committed the instant offense while on parole,
he receive[d] two additional points under Guidelines 4A.1(d)."
(Sent. Tr. at 26.)  Therefore, Mr. Diaz had 11 criminal history
points, which placed him within criminal history category V.
(*Id.*)  The Court found that Mr. Diaz qualified as a career
offender, "because the instant offense [wa]s a crime of
violence, and he had[d] committed two prior violent felonies,"
as set forth in the Guidelines, which resulted in a criminal
history designation of category VI.  (*Id.*)  This Court
independently determined that the applicable Guidelines adjusted
offense level was 34, and the Guidelines range was 262-327
months, although the statutory maximum was 240 months.  (*Id.* at
26-27.)  This Court also considered the Section 3553(a) factors,
and imposed a sentence of 240 months of incarceration, three
years of supervised release, and restitution of $296,300 for

conspiracy to commit Hobbs Act robbery (Count One) on three occasions.[5]  (*Id.* at 35-37.)  The Court granted the Government's motion to dismiss the remaining Counts Two, Three, and Four, and the underlying indictments.  (*Id.* at 39.)  The Court entered judgment, convicting Mr. Diaz of conspiracy to commit Hobbs Act robbery, on November 21, 2013.  (10-cr-277, ECF No. 253.)

## III. Procedural History

Following his sentencing and the entry of judgment, Mr. Diaz did not file a notice of appeal.  On November 24, 2014, Mr. Diaz filed a *pro se* petition for habeas relief pursuant to Section 2255.  (ECF No. 1, Motion to Vacate, Set Aside, or Correct Sentence; ECF No. 2, Memorandum in Support ("Pet.").)  Mr. Diaz's petition argued that his conviction and sentence were unconstitutional for two reasons: (1) his initial counsel, Mr. Mirvis, rendered ineffective assistance of counsel by allegedly failing to communicate the Government's earlier plea offer to Mr. Diaz; and (2) his second attorney, Mr. Nooter, rendered ineffective assistance of counsel by allowing Mr. Diaz to plead guilty pursuant to a plea agreement that included a waiver of his right to file a Section 2255 petition.  (Pet. at 2, 16-17.)

---

[5] A conviction charging conspiracy to commit more than one offense is treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit.  U.S.S.G. § 1B1.2(d).

On January 2, 2015, on this Court's order, Mr. Mirvis
and Mr. Nooter filed declarations responding to Mr. Diaz's
allegations of ineffective assistance of counsel.  (ECF No. 6,
Mirvis Decl.; ECF No. 5, Declaration of Thomas Nooter, Esq.
("Nooter First Decl.").)  On June 5, 2015, the Government filed
its opposition to Mr. Diaz's Section 2255 petition.  (ECF No.
11, Opp.)  Mr. Diaz filed a reply on August 7, 2015.  (ECF No.
16, Reply in Support of Petition.)

On February 4, 2016, Mr. Diaz moved to amend his
petition to allege that he was rendered ineffective assistance
of counsel regarding counsel's failure to file a notice of
appeal.  (ECF No. 17, Motion for Leave to Amend.)  The Court
granted Mr. Diaz's motion.  (ECF Dkt. Order, June 22, 2016.)  On
November 1, 2017, Mr. Diaz's filed an amended petition.  (ECF
No. 24, Defendant's Motion to Amend ("Amend. Pet.").)

Mr. Diaz's amended petition raised three additional
claims that Mr. Nooter rendered ineffective assistance of
counsel, alleging that Mr. Nooter: (1) did not challenge the
Court's order imposing restitution of $296,300 under 18 U.S.C. §
3663A, the Mandatory Restitution Victims Act (the "MVRA"); (2)
failed to file a notice of appeal regarding Mr. Diaz's treatment
as a career offender, in violation of the holding in *Descamps v.
United States*, 570 U.S. 254 (2013); and (3) failed to file a

notice of appeal regarding sentencing enhancements, including Guidelines § 2B3.1.  (*See generally id.*)

On August 16, 2016, on this Court's order, Mr. Nooter filed a second declaration responding to the allegations in Mr. Diaz's amended petition.  (ECF No. 22, Declaration of Thomas Nooter, Esq. ("Nooter Second Decl.").)  On December 6, 2018, the Government opposed Mr. Diaz's amended petition.  (ECF No. 30, Government's Opposition to Amended Petition.)

### **Standard of Review**

"A prisoner in custody under sentence of a [federal court] claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, . . . or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).  The Court "shall vacate and set the judgment aside" if the Court finds that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."  *Id.* § 2255(b).  To respect the finality of criminal convictions, "a collateral attack on a final judgment in a federal criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an

error of law or fact that constitutes a 'fundamental defect
which inherently results in a complete miscarriage of justice.'"
*United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting
*Hill v. United States*, 368 U.S. 424, 428 (1962)).

## Discussion

Generally, an amended petition would replace a
petitioner's original petition. *See, e.g.*, *King v. Cunningham*,
442 F. Supp. 2d 171, 178 (S.D.N.Y. 2006). However, given Mr.
Diaz's *pro se* status, and the fact that his amended petition
asserts grounds for relief that are distinct from his original
petition, the Court will consider it to be supplemental rather
than an amended petition, and will discuss the claims raised by
both petitions. *See Channer v. Dep't of Homeland Sec.*, 406 F.
Supp. 2d 204, 208 (D. Conn. 2005) ("Ordinarily, a supplemental
pleading does not replace the original pleading."); Fed. R. Civ.
P. 15(d).

Together, Mr. Diaz's petition and amended petition
move for habeas relief pursuant to Section 2255 on the grounds
that: (1) he was rendered ineffective assistance of counsel when
Mr. Mirvis failed to communicate the October 2010 plea offer;
(2) his waiver of his right to appeal or collaterally attack his
conviction and sentence was not knowing and voluntary because he
was rendered ineffective assistance of counsel by Mr. Nooter;
(3) he was rendered ineffective assistance of counsel when Mr.

Nooter failed to challenge or appeal the Court's order imposing restitution of $296,300 under the MVRA; (4) he failed to file a notice of appeal regarding his treatment as a career offender because he was rendered ineffective assistance of counsel by Mr. Nooter; and (5) he failed to file a notice of appeal regarding sentencing enhancements because he received ineffective assistance of counsel by Mr. Nooter.

## I.    Preliminary Considerations

The Court begins its discussion by addressing the threshold issues of (1) whether the appellate and collateral attack waiver in Mr. Diaz's plea agreement bars the petitions, (2) whether the Court may decide the petitions on the submitted record before the Court, or whether an evidentiary hearing is necessary, and (3) whether Mr. Diaz's failure to file a direct appeal bars the petitions.

### A. Waiver

Mr. Diaz agreed in his plea agreement and during his plea hearing to waive his right to appeal or collaterally attack his conviction and sentence, including under Section 2255, in the event this Court imposed a prison sentence of 240 months or less, which the Court ultimately did. A threshold question, therefore, is whether Mr. Diaz's collateral attack waiver in his plea agreement and during his plea completely bars his petition and amended petition.

14

"A defendant's knowing and voluntary waiver of the right to appeal or collaterally attack his conviction and/or sentence is enforceable." *Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016). The waiver is enforceable even after a subsequent change in the law affecting the grounds on which the defendant was originally sentence. *Id.*; *United States v. Morgan*, 406 F.3d 135, 137 (2d Cir. 2005) ("[T]he possibility of a favorable change in the law after a plea is simply one of the risks that accompanies pleas and plea agreements."). A waiver is knowing if the "defendant fully understood the potential consequences of his waiver." *United States v. Monzon*, 359 F.3d 110, 116 (2d Cir. 2004). "[E]xceptions to the presumption of the enforceability of a waiver . . . occupy a very circumscribed area of [this Circuit's] jurisprudence." *Sanford*, 841 F.3d at 580 (quoting *United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000)).

Mr. Diaz acknowledged under oath at his plea hearing and in his plea agreement that he "agree[d] not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court impose[d] a term of imprisonment of 240 months or below." (Plea Agreement at 3-4; *see* Pl. Tr. at 15-16.) In signing the agreement, Mr. Diaz represented that he had "read the entire agreement and discussed it with [his] attorney"

and "underst[ood] all of its terms and [was] entering into it knowingly and voluntarily." (Plea Agreement at 6.) Mr. Diaz also represented under oath that he understood the terms of the plea agreement, including, specifically, the waiver provision of the plea agreement. (Pl. Tr. at 15-16); *see United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001) ("[T]he district court was entitled to rely upon the defendant's sworn statements, made in open court . . . that he understood the consequences of his plea, had discussed the plea with his attorney, knew he could not withdraw the plea, understood that he was waiving his right to appeal a sentence below [the sentence stipulated in plea agreement], and had been made no promises except those contained in the plea agreement.").

Mr. Diaz argues that Mr. Nooter rendered ineffective assistance of counsel in negotiating a waiver that stipulated to a waiver of any potential claims of ineffective assistance of counsel under Section 2255, and that Mr. Diaz's waiver was not knowing or voluntary. (Pet. at 17.) Mr. Nooter's first declaration, filed January 2, 2015, notes that although Mr. Diaz relies on an October 2014 memorandum by the Deputy Attorney General, which directed Offices of the United States Attorneys not to enforce Section 2255 plea waivers based on ineffective assistance of counsel, Mr. Diaz pleaded guilty and was sentenced months before that memo was issued. (Nooter Decl. ¶¶ 8-10.)

Thus, Mr. Nooter states that he could not have sought to negotiate the elimination of the waiver based on a memo that had not yet been issued.  (*Id.*)

Mr. Diaz's claim that he received ineffective assistance of counsel with respect to the waiver is not barred, because it serves as an attack on the constitutionality of the process by which Mr. Diaz waived his rights.  *See, e.g., United States v. Djelevic*, 161 F.3d 104, 106-07 (2d Cir. 1998).  For the reasons discussed more fully below, the Court finds that Mr. Diaz's waiver was made knowingly, voluntarily, and competently, and that the remainder of his claims are barred.

B. Evidentiary Hearing

The Court must also decide whether the claims in Mr. Diaz's petitions can be addressed on the submitted record before the Court, or whether Mr. Diaz's request for an evidentiary hearing should be granted.  "In ruling on a motion under § 2255, the district court is required to hold a hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'"  *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (quoting 28 U.S.C. § 2255).  "[T]he filing of a motion pursuant to § 2255 does not automatically entitle the movant to a hearing."  *Id.* No hearing is necessary "where the allegations are 'vague, conclusory, or palpably incredible.'"  *Id.* (quoting *Machibroda*

*v. United States*, 368 U.S. 487, 495 (1962)).  A hearing is necessary only where the petition "set[s] forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief."  *Id.*

Even if a hearing is warranted, it is "within the district court's discretion to determine the scope and nature of a hearing."  *Raysor v. United States*, 647 F.3d 491, 494 (2d Cir. 2011) (citing *Chang v. United States*, 250 F.3d 79, 85–86 (2d Cir. 2001)).  A full testimonial hearing is not necessary in all cases.  *Puglisi v. United States*, 586 F.3d 209, 214–15 (2d Cir. 2009).  A court does not need to hold a full testimonial hearing where "the testimony of [the petitioner] and his trial counsel would add little or nothing to the written submissions."  *Chang*, 250 F.3d at 86; *see also Dolney v. United States*, 2011 WL 73076, at *5 (E.D.N.Y. Jan. 10, 2011) (attorney affidavit contradicting petitioner's section 2255 claim that he asked his lawyer to file a notice of appeal "in light of" attorney's "demonstrated dedication to his client" was sufficient to find that a testimonial hearing is unnecessary); *Florez v. United States*, 2007 WL 162764, at *4 (E.D.N.Y. Jan. 18, 2007) ("A review of the papers submitted by the parties, including a detailed affidavit from [defendant's counsel], are sufficient to decide this issue; a full testimonial hearing is unnecessary").

Courts frequently "consider the 'trial record, letters, documents, exhibits, affidavits and written interrogatories' and may adopt a 'middle road' approach, declining to hold a hearing and 'deciding disputed facts on the basis of written submissions.'" *Rosario v. United States*, 2019 WL 5260784, at *3 (S.D.N.Y. Oct. 17, 2019) (quoting *Pham v. United States*, 317 F.3d 178, 184 (2d Cir. 2003)); *see also Wang v. United States*, 458 F.App'x. 44, 45 (2d Cir. 2012) (summary order) ("[T]he District Court did conduct an evidentiary hearing, albeit one limited to the sworn, written submissions of [petitioner], his former counsel, and the interpreters.").

Here, the Court directed Mr. Mirvis and Mr. Nooter to respond to Mr. Diaz's allegations of ineffective assistance of counsel.  Mr. Mirvis filed a detailed two-page declaration describing his discussions the offer with Mr. Diaz, and contradicting Mr. Diaz's unsworn general assertion that Mr. Mirvis failed to communicate the plea offer.  (*See generally* Mirvis Decl.)  Mr. Nooter also filed a detailed five-page declaration addressing Mr. Diaz's unsworn assertion that Mr. Nooter rendered ineffective assistance regarding the waiver provision of his plea agreement.  (*See generally* Nooter First Decl.)  In addition, Mr. Nooter filed a thorough, eight-page second declaration, supported by a letter he wrote to Mr. Diaz, addressing Mr. Diaz's assertions that Mr. Nooter failed to file

a notice of appeal, and explaining that Mr. Diaz did not request that he do so.  (*See generally* Nooter Second Decl.)

The Court finds the "middle road" approach is sufficient to decide the petitions, and that a full-blown evidentiary hearing would add "little to nothing" to the Court's adjudication of Mr. Diaz's petition.  Though the matters for which Mr. Diaz seeks a hearing could warrant testimony from Mr. Diaz, Mr. Mirvis, and Mr. Nooter, based on Mr. Diaz's submissions and the declarations submitted by Mr. Mirvis and Mr. Nooter, there is no need to hear their testimony live because any such testimony would be redundant of the record before the Court.  Accordingly, the Court will decide Mr. Diaz's petition on the submitted record.

C. Failure to File a Notice of Appeal

Mr. Diaz did not file a notice of appeal, but has now presented claims that should have been submitted as a direct appeal.  Though a habeas petition under Section 2255 may be filed simultaneously with a direct appeal, a "collateral attack is not a substitute for direct appeal and petitioners are therefore generally required to exhaust direct appeal before bringing a petition [pursuant to] § 2255."  *United States v. Vilar*, 645 F.3d 543, 548 (2d Cir. 2011) (quoting *United States v. Dukes*, 727 F.2d 34, 41 (2d Cir. 1984)).

A petitioner has procedurally forfeited any claim that was not timely filed on direct appeal, unless he can show "(1) cause for failing to raise the issue, and prejudice resulting therefrom; or (2) actual innocence." *Sapia v. United States*, 433 F.3d 212, 216 (2d Cir. 2005) (quoting *Rosario v. United States*, 164 F.3d 729, 732 (2d Cir. 1998)).  Mr. Diaz does not attempt to show actual innocence, nor is he able to.  *See Bousley v. United States*, 523 U.S. 614, 623-24 (1998) ("Actual innocence means factual innocence, not mere legal insufficiency."); *see also Schlup v. Delo*, 513 U.S. 298, 299 (1995) (To satisfy the "actual innocence standard, a petitioner must show that, in light of the new evidence, it is more likely than not no reasonable juror would have found him guilty beyond a reasonable doubt.").

Though Mr. Diaz cannot show actual innocence, cause and prejudice may be shown if counsel failed to file a notice of appeal against the Mr. Diaz's express instructions.  *Roe v. Flores-Ortega*, 528 U.S. 470, 471 (2000).  Mr. Diaz argues that his counsel failed to file a notice of appeal on his behalf, but does not assert that he instructed his counsel to do so. (Amend. Pet. at 1, 4-5.)  Mr. Nooter's second declaration specifically avers that because Mr. Diaz did not request that an appeal be filed, Mr. Nooter did not do so.  (Nooter Second Decl. ¶¶ 8-9.)  Accordingly, the claims in Mr. Diaz's original

petition all could have been raised on appeal, and therefore are barred due to his failure to exhaust.

## II.  **Grounds for Relief**

For the reasons that follow, even if the claims were not barred, the two grounds raised in Mr. Diaz's first petition find no support in the record, and are without merit. Furthermore, the additional grounds raised in his amended petition are time-barred, and are also without merit.

### A. Ground One: Ineffective Assistance of Counsel for Failure to Communicate Plea Offer

Mr. Diaz generally alleges that Mr. Mirvis, his first counsel, failed to communicate the Government's draft plea offer in October 2010.  (Pet. at 18.)  His assertion is unavailing.

To prevail on a claim of ineffective assistance of counsel, a petitioner must meet the "highly demanding" standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).  Under *Strickland*, a petitioner must show (1) that defense counsel's representation fell below an objective standard of reasonableness (the "performance prong"); and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (the "prejudice prong").  *Pham*, 317 F.3d at 182 (citing *Strickland*, 466 U.S. at 688, 694); *see also Parker v. Ercole*,

666 F.3d 830, 834 (2d Cir. 2012) (court need not address both prongs if a petitioner makes an insufficient showing on one).  A petitioner bears the burden of establishing both that his counsel was deficient and that he was prejudiced.  *See United States v. Birkin*, 366 F.3d 95, 100 (2d Cir.2004) (citing *Strickland*, 466 U.S. at 687).

"The performance component of the *Strickland* test asks whether a 'counsel's representation fell below an objective standard of reasonableness.'"  *Kovacs v. United States*, 744 F.3d 44, 50 (2d Cir. 2014) (quoting *Strickland*, 466 U.S. at 688).  A court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  The court examines the reasonableness of counsel's actions, keeping in mind that "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"  *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690).

The prejudice component of the *Strickland* test asks whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Gueits v. Kitzpatrick*, 612 F.3d

118, 122 (2d Cir. 2010) (quoting *Strickland*, 466 U.S. at 694).

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Merely showing that counsel's errors had "some conceivable effect" on the outcome is not enough to satisfy the prejudice prong, but "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id*. at 693. Thus, a petitioner must show that "but for the ineffective assistance of counsel there is a reasonable probability that the defendant would have accepted the plea." *United States v. Marks*, 561 F.App'x. 42, 45 (2d Cir. 2014) (summary order) (citing *Missouri v. Frye*, 566 U.S. 134, 146 (2012)).

A finding of prejudice requires some objective evidence other than defendant's assertions. *Pham*, 317 F.3d at 182 (citing *United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998). With respect to a plea offer, a court may consider a significant sentencing disparity between the plea offer and the sentence imposed, in combination with defendant's statement of his intention, as sufficient to satisfy objective evidence. *Id*. However, "[e]ven with such a disparity . . . the district court must still find the defendant's evidence to the effect he would have made a different decision but for his counsel's deficient advice to be credible." *Meszaros v. United States*, 201

F.Supp.3d 251, 269 (E.D.N.Y. 2016) (quoting *United States v. Frederick*, 526 F.App'x. 91, 93 (2d Cir. 2013)); *see also Page v. Martuscello*, 2011 WL 3678820, at *27 (S.D.N.Y. Aug. 23, 2011) ("The Second Circuit, however, did not create a *per se* rule that a petitioner is always prejudiced when there is a significant sentencing disparity; rather, such disparity is simply a factor for a court to consider in addressing prejudice."); *but see Gonzalez*, 722 F.3d at 130 ("[O]ur jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance.") (quoting *Glover v. United States*, 531 U.S. 198, 203 (2001)).

   *i.   Deficient Performance*

        As a general rule, defense counsel "has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Frye*, 566 U.S. at 145.  A defense counsel's failure to convey a plea offer is "unreasonable performance" and satisfies the performance prong of the *Strickland* test.  *Pham*, 317 F.3d at 183 ("[T]here can be no doubt that counsel must always communicate to the defendant the terms of any plea bargain offered by the prosecution") (quoting *Cullen v. United States*, 194 F.3d 401, 404 (2d Cir.1999)); *see also  Mickens v. United States*, 333 F.Supp.2d 44, 50 (E.D.N.Y. 2004) ("The failure to communicate a

plea offer is a fundamental violation of the Sixth Amendment right to the effective assistance of counsel.").

As discussed above, Mr. Mirvis stated in his declaration that on or about October 13, 2010, the Government provided him with a draft plea agreement, which he discussed with and explained to Mr. Diaz.  (Mirvis Decl. ¶¶ 3-5.)  Mr. Mirvis stated that Mr. Diaz advised him that he was not interested in the draft plea offer and that he would rather go to trial, though Mr. Diaz "advised that he would be interested in a plea agreement that capped his exposure in the five-year range."  (*Id.* ¶ 6.)

Neither Mr. Diaz's petition nor his reply to the Government's opposition allege specific facts or provide objective evidence that Mr. Mirvis failed to communicate the plea offer.[6]  Rather, Mr. Diaz makes an unsworn, blanket assertion that "Mr. Mirvis [] never communicated this offer from the Government" (Pet. at 12), and the "decision not to communicate a plea offered by the [G]overnment . . . cannot be justified" (Reply at 2).  "Such bare assertions, offered without

---

[6] Mr. Diaz first raised the claim of ineffective assistance of counsel by Mr. Mirvis during sentencing, when he was represented by Mr. Nooter.  During that proceeding, Mr. Diaz stated that there was a *Lafler* issue" with regard to his first counsel, and that he "would have copped out to the complaint way before, like I wanted to . . . if [he] had the opportunity or if I was advised correctly."  (Sent. Tr. at 5.)  However, Mr. Diaz did not raise any specific facts to the Court at that time to suggest that he received ineffective assistance of counsel.

detail or supporting documentation, have been found inadequate to support a claim of ineffective assistance in the face of a credible and contradictory affidavit by counsel." *United States v. Rosario*, 2015 WL 4629453, at *6 (S.D.N.Y. Aug. 4, 2015). Notably, Mr. Diaz alleges no facts to show how he ultimately learned of the draft plea agreement, if he did not learn about it from Mr. Mirvis. Moreover, the fact that Mr. Mirvis was engaged in plea negotiations with the Government in 2010 was known to Mr. Diaz, as it was discussed during status conferences at which Mr. Diaz was present. (*See* 10-cr-277, ECF No. 17, Minute Entry; 10-cr-277, ECF No. 24, Order to Continue; 10-cr-277, ECF No. 285, Transcript of October 25, 2010 Status Conference.) Even if Mr. Mirvis had not submitted a detailed, sworn declaration, it would be doubtful that Mr. Mirvis would have failed to communicate a plea offer received in October 2010 when Mr. Diaz knew he had been conducting negotiations on his behalf over several months. Lastly, Mr. Nooter did not recall Mr. Diaz ever discussing with him any need for a collateral attack based on prior counsel's alleged ineffective assistance of counsel. (Nooter First Decl. ¶ 4.)

In the absence of any evidence beyond Mr. Diaz's conclusory, unsworn allegations, which are contradicted by Mr. Mirvis's sworn declaration, the Court cannot and does not find that Mr. Diaz was rendered ineffective assistance of counsel on

the basis of Mr. Mirvis's alleged failure to communicate a plea offer.

> ### ii.   Prejudice

Given that Mr. Diaz "fails to demonstrate constitutionally deficient 'performance,' the first prong of the *Strickland* test, this [C]ourt need not reach the second 'prejudice' prong." *Palacios v. Burge*, 589 F.3d 556, 566 (2d Cir. 2009).  Nonetheless, the Court further finds that Mr. Diaz has not satisfied the prejudice prong.  Even if Mr. Diaz showed that Mr. Mirvis failed to communicate a plea offer, he would still have to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Gueits*, 612 F.3d at 122.

Mr. Diaz argues "that contrary to the Government's contention," the Supreme Court held in *Glover v. United States* that a "lower court cannot engraft onto the prejudice [prong] of the *Strickland* test the requirement that any increase in sentence must meet a standard of significance."  (Reply at 2.) The Court agrees with Mr. Diaz that the *Strickland* test does not require a showing of a significant sentencing disparity between his final plea agreement and the allegedly uncommunicated plea agreement.  *See Porter v. United States*, 2009 WL 2601297, at *5 (E.D.N.Y. Aug. 20, 2009) ("When a defendant can demonstrate a reasonable probability that his sentence increased due to

counsel's errors, even relatively short increases in the ultimate sentence received will suffice to show *Strickland* prejudice.") (citing *Glover*, 531 U.S. at 203).  Rather, a significant sentencing disparity would support Mr. Diaz's allegations as objective evidence.  *See Pham*, 317 F.3d at 182 (finding significant sentencing disparity is sufficient objective evidence in support of petitioner's assertions).

The Second Circuit found a significant disparity where the plea offered a sentence in the range of 78-97 months and the sentence received after trial was "210 months, which [was] more than double."  *Id*. at 183; *see also Gordon*, 156 F.3d at 380-81 (2d Cir. 1998) (finding significant sentencing disparity between counsel's improper advice of maximum sentence exposure of 120 months and sentence after conviction of 210 months).  "'More than double,' however, is not required," and the sentencing disparity is prone to subjective assessment. *Mickens v. United States*, 2005 WL 2038589, at *8 (E.D.N.Y. Aug. 17, 2005) ("There is no magic formula to use in determining whether a disparity between sentences is 'significant.'").

Here, the plea offer in October 2010, a copy of which was provided to the Court as an attachment to the declaration filed by Mr. Lerer, estimated that the Guidelines range for Mr. Diaz's sentence would be 188 to 235 months of imprisonment. (Lerer Decl., Exhibit A.)  The plea agreement under which Mr.

Diaz pleaded guilty in February 2012 provided for an estimated
Guidelines range between 324-405 months, however, the statutory
maximum was 240 months.  (Plea Agreement at 3.)  The sentencing
range anticipated by the Government in October 2010 was
therefore five to 52 months shorter than his ultimate sentence
of 240 months.  Though this disparity between the low end of the
plea offer is not insignificant, it does not rival the disparity
found in the case law.  *See*, *e.g.*, *Pham*, 317 F.3d at 183
(finding significant disparity between an offer of 78 to 97
months and sentence of 210 months); *Gordon*, 156 F.3d at 377-78
(disparity of over 11 years constituted sufficient objective
evidence to support defendant's claim that he would have
accepted the plea offer had he known his actual exposure).  In
any event, even if the Court found the disparity here to be
significant, Mr. Mirvis's declaration stated that Mr. Diaz told
him in 2010 that he was only interested in a plea that "capped
his exposure in the five-year range."  (Mirvis Decl. ¶ 6.)

        Accordingly, Mr. Diaz's claim of ineffective
assistance by Mr. Mirvis for failure to communicate a plea offer
is without merit, and is denied.

        B. Ground Two: Ineffective Assistance of Counsel at
           Pleading for Waiver of His Rights to File an Appeal
           or Section 2255 Petition

        Mr. Diaz argues that Mr. Nooter provided ineffective
assistance at pleading, rendering his agreement to waive his

right to appeal or collaterally attack his conviction and sentence unknowing and involuntary.  (Pet. at 31-32.)  Mr. Diaz's argument again lacks merit.

Generally, a "defendant's knowing and voluntary waiver of the right to appeal or collaterally attack his conviction and/or sentence is enforceable." *Sanford*, 841 F.3d at 580. However, a waiver is not enforceable if it "was not made knowingly, voluntarily, and competently." *Gomez-Perez*, 215 F.3d at 319; *see also Dolney*, 2011 WL 73076, at *3 ("waiver provision of plea agreement is not valid if entered into without effective assistance of counsel") (citing *United States v. Monzon*, 359 F.3d 110, 118-19 (2d Cir.2004)).

Mr. Diaz again generally asserts that Mr. Nooter rendered ineffective assistance by allowing Mr. Diaz to agree to a plea agreement that waived his right to appeal and collaterally attack his sentence.  (Pet. at 33-34.)  Mr. Diaz states that but-for Mr. Nooter's "unprofessional error," the results of the proceeding would have been different and that the wavier "can hardly be said to be knowing and intelligent." (*Id.* at 34.)

First, Mr. Diaz relies on the October 14, 2014, Department of Justice Memorandum ("Cole Memorandum"), which directed that the Government should no longer enforce waivers of the right to collateral attack based on ineffective assistance

of counsel.  (*Id*. at 33.)  However, the Cole Memorandum was published in October 2014, nearly a year after Mr. Diaz's sentencing in November 2013.  (Nooter First Decl., Exhibit A., Memorandum from Deputy Attorney General James M. Cole to All Federal Prosecutors Regarding Department Policy on Waivers of Claims of Ineffective Assistance.)  Mr. Diaz fails to allege any facts that Mr. Nooter could have relied on at the time of his guilty plea and negotiations preceding it.  *See Sanders v. United States*, 2016 WL 3671360, at *12 (E.D.N.Y. July 5, 2016) ("[T]he [Cole] memorandum emphasizes that 'the Department is confident that a waiver of a claim of ineffective assistance of counsel is both legal and ethical,'" and "[i]n any case, prospective administrative policies of the Department of Justice do not govern adjudication of alleged constitutional violations in previously decided cases.").  Thus, Mr. Nooter did not render ineffective assistance by not raising the Cole Memorandum to negotiate for removal the appellate and collateral attack waivers during plea negotiations.

Second, Mr. Diaz's statement that his waiver "can hardly be said to be knowing and intelligent" (Pet. at 34) is not supported by the record.  At his plea hearing, Mr. Diaz represented under oath that he received a copy of the indictment and the plea agreement, understood the charges pending against him and the terms of the agreement, discussed the charges and

the terms of the plea agreement with his attorney, and was
satisfied with Mr. Nooter's representation.  (Pl. Tr. at 6.)
Mr. Diaz also represented that his signature on the plea
agreement indicated his understanding of (and agreement to) the
terms, that his plea was voluntary and knowing, and that no one
made any threats or promises to him to induce him to plead, or
about the sentence he would receive.  (*Id*. at 10, 18.)  Further,
Mr. Diaz represented that he understood that by entering into
the plea agreement, he waived his right to "appeal or otherwise
challenge [his] conviction or [his] sentence if [the Court]
impose[d] a sentence that is 240 months or less. . . ."  (*Id*. at
15.)  Mr. Nooter's declaration stated that he advised Mr. Diaz
that the appeal waiver within the plea agreement meant Mr. Diaz
waived his right to appeal and to file a Section 2255 petition.
(Nooter First Decl. ¶ 4.)  Mr. Diaz has not alleged contrary
facts in his unsworn petition.

In reviewing the totality of the record, the Court
respectfully denies Mr. Diaz's claim that his appellate and
Section 2255 waiver was not knowing and voluntary.  The Second
Circuit has held that a waiver was knowing and voluntary when
"(1) [the] petitioner signed the plea agreement, (2) he stated
to the [court] that he had read and understood the plea
agreement, (3) [he] did not attempt to appeal his sentence, even
though he had been told by the sentencing judge he had the right

33

to appeal, [and] (4) he did not claim, in his in his § 2255 motion, that he had not understood the waiver contained in his plea agreement. . . ." *Garcia-Santos v. United States*, 273 F.3d 506, 508 (2d Cir. 2001).  All of the above facts preclude habeas relief as to Mr. Diaz's claim based on the plea agreement waiver.

Accordingly, the collateral attack waiver in Mr. Diaz's plea agreement remains valid, and the remainder of his claims are procedurally barred.

### C. Timeliness of the Amended Petition

Petitions filed under Section 2255 are subject to a one-year statute of limitations, running from "the date on which the judgment of conviction becomes final."  28 U.S.C. § 2255(f)(1).  Judgment in Mr. Diaz's case was entered on November 21, 2013.  (10-cr-277, ECF No. 253.)  Because Mr. Diaz did not exercise his appellate rights, the judgment became final 14 days later, on December 5, 2013, i.e., "the date on which his time to file a direct appeal expired." *Moshier v. United States*, 402 F.3d 116, 119 (2d Cir. 2005); *see* Fed. R. App. P. 4(b)(1)(A)(i) ("In a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days after . . . the entry of either the judgment or the order being appealed.").  The Court advised Mr. Diaz at sentencing that if he chose to file an appeal, he had to do so "within 14 days of

judgment."   (Sent. Tr. at 28.)   Because he did not file any
appeal, the one-year statute of limitations expired one year
after the 14 day appellate period, on December 5, 2014.

Mr. Diaz filed his original petition before the
limitations period expired, on November 24, 2014.   Subsequently,
Mr. Diaz moved to amend his petition to add new claims on
February 4, 2016, and the amended petition with his new claims
was filed on November 1, 2017.   Because the amended petition was
filed in 2017, long after the statute of limitations expired in
December 2014, the claims in the amended petition are time-
barred. *See* 28 U.S.C. § 2255(f)(1).   "If claims asserted after
the one-year period could be revived simply because they relate
to the same trial, conviction, or sentence as a timely filed
claim," the "limitation period would have slim significance."
*Mayle v. Felix*, 545 U.S. 644, 662 (2005).

In order for the claims in Mr. Diaz's amended petition
to be considered timely, each claim, respectively, would have to
relate back to the initial petition.   *See* Fed. R. Civ. P. 15(c);
*see also Martin v. United States,* 834 F.Supp.2d 115, 123
(E.D.N.Y. 2011); *Delutro v. United States*, 2014 WL 4639198, at
*5 (E.D.N.Y. Sept. 16, 2014).   The court examines whether each
claim "arose out of the conduct, transaction, or occurrence set
out—or attempted to be set out—in the original pleading."   Fed.
R. Civ. P. 15(c)(1)(B); *see also Mayle*, 545 U.S. at 647

35

("[R]elation back will be in order so long as the original and amended petitions state claims that are tied to a common core of operative facts").  In *Mayle*, "the Supreme Court limited claims in an amended petition to those that arose from the same core facts alleged in the original petition, not those related generally to petitioner's trial, conviction, or sentence." *Gibson v. Artus*, 407 F.App'x. 517, 519 (2d Cir. 2010) (summary order).

Mr. Diaz's original petition alleges two claims of ineffective counsel related to his plea negotiations and plea: that his initial retained counsel, Mr. Mirvis, failed to communicate a plea offer to Mr. Diaz, and that his second appointed counsel, Mr. Nooter, allowed Mr. Diaz to plead guilty pursuant to a plea agreement that included a waiver of his right to file a Section 2255 petition.  (Pet. at 17.)  In his amended petition, Mr. Diaz argues that Mr. Nooter rendered ineffective assistance of counsel because he: (1) did not challenge or appeal the Court's sentence imposing restitution of $296,300 under the MVRA; (2) failed to file a notice of appeal regarding Mr. Diaz's treatment as a career offender, in violation of *Descamps*, 570 U.S. 254; and (3) failed to file a notice of appeal regarding sentencing enhancements, including Guidelines § 2B3.1.  (Amend. Pet. at 1-4.)

Though the claims asserted in Mr. Diaz's amended petition also allege ineffective assistance of counsel, the grounds for relief regarding his sentencing are dissimilar to the ineffective assistance claims regarding his plea asserted in his original petition. *See Soler v. United States*, 2010 WL 5173858, at *4 (S.D.N.Y. Dec. 20, 2010) ("[E]ven an ineffective assistance of counsel claim, when alleging a different ground for ineffective assistance, does not relate back to an earlier ineffective assistance claim."); *see also Gonzalez v. United States*, 2018 WL 5023941, at *6 (S.D.N.Y. Oct. 17, 2018); *Hiers v. Bradt*, 2014 WL 6804252, at *6 (E.D.N.Y. Dec. 3, 2014).

Mr. Diaz's allegations in his amended petition that Mr. Nooter rendered ineffective assistance by failing to challenge restitution at sentencing or on appeal (Ground Three), and failing to appeal Mr. Diaz's treatment as a career offender (Ground Four) and the sentencing enhancements (Ground Five), do not relate back to his claims that counsel rendered ineffective assistance in failing to communicate a plea offer and in allowing Mr. Diaz to waive his right to file a Section 2255 petition in his plea agreement. Mr. Diaz's original petition focuses on the pre-trial plea negotiations, while the claims in the amended petition arise out of allegations of ineffective assistance during sentencing and after judgment. *See Desrosiers v. Phillips*, 2008 WL 4469594, at *7 n.5 (E.D.N.Y. Oct. 3, 2008)

("it is now fairly well-established that ineffective assistance
of counsel claims in the habeas context do not relate back to
one another merely because they both involve counsel's allegedly
deficient performance"); *Veal v. United States*, 2007 WL 3146925,
at *6 (S.D.N.Y. Oct. 9, 2007) ("There is a clearer line of
demarcation here, where we are asked to relate an attorney's
conduct at trial and the level and quality of his pre-trial
communications with his client.")

        Mr. Diaz does not and cannot provide a reason why his
third, fourth, and fifth additional claims regarding restitution
at sentencing, and the appeal of sentencing determinations,
could not have been asserted at the time of his original
petition.  *See Beckford v. United States*, 2017 WL 4286615, at *6
(E.D.N.Y. Sept. 26, 2017).  Therefore, all three grounds for
relief raised in Mr. Diaz's amended petition are time-barred.

        D. <u>Ground Three: Restitution</u>

        Even if Mr. Diaz's claim that Mr. Nooter failed to
challenge the Court's order imposing restitution under the MVRA
at sentencing was not untimely and procedurally barred, Mr. Diaz
would not be able to show that Mr. Nooter's representation fell
below the objective standard of reasonableness, nor that the
result of the proceeding would have been different but for Mr.
Nooter's alleged error.  *See Strickland*, 466 U.S. at 688, 694).

At sentencing, the Court ordered restitution based both 18 U.S.C. § 981(a)(1)(c) and Guideline 5E1.1(a)(1). (*See* Sent. Tr. at 27.) Sentencing Guideline 5E1.1(a)(1) provides for restitution at sentencing if restitution is authorized by a statute, such as 18 U.S.C. § 3663A, the MVRA. Under the MVRA, mandatory restitution is triggered when a defendant commits "a crime of violence." *Id.* at § 3663A(c)(1)(A)(i). At the time of Mr. Diaz's sentencing in 2013, conspiracy to commit Hobbs Act robber was, without question, "a crime of violence" under Second Circuit law. *See United States v. Barrett*, 903 F.3d 166, 175 (2d Cir. 2018) ("[I]t has long been the law in this circuit that a conspiracy to commit a crime of violence is itself a crime of violence . . . ."), *cert. granted, judgment vacated*, 139 S. Ct. 2774 (2019), a*nd abrogated by United States v. Davis*, 139 S. Ct. 2319 (2019). Thus, restitution was properly authorized by the MVRA at the time of sentencing because Mr. Diaz pleaded guilty to what was, at the time, a crime of violence, i.e., conspiracy to commit Hobbs Act robbery.

Subsequently, the Supreme Court decided *Davis*, which effectively "precludes [courts] from concluding . . . that [a] Hobbs Act robbery conspiracy crime qualifies as a . . . crime of violence." *United States v. Barrett*, 937 F.3d 126, 127 (2d Cir. 2019) (citing *Davis*, 139 S. Ct. 2319, 2327). This change in the law, however, cannot give rise to a retroactive claim for

ineffective assistance of counsel.  Just as Mr. Nooter could not have raised the Cole Memorandum in plea negotiations because that memo had not yet been issued, he likewise could not have invoked a subsequent Supreme Court case at sentencing or on appeal, especially given that Second Circuit precedent prior to *Davis* was clear.  *See Mizell v. United States*, 2020 WL 2216561, at *4 (S.D.N.Y. May 6, 2020) ("[T]he outcome of *Davis* was not so obvious that it was objectively unreasonable for counsel to rely on then-binding Second Circuit precedent.").[7]

Moreover, even though Mr. Diaz's conviction for Hobbs Act conspiracy is no longer a crime of violence, a defendant can still be ordered to pay restitution under the MVRA if the defendant commits "an offense against property under this title."  18 U.S.C. § 3663A(c)(1)(A)(ii).  Thus, even if *Davis* applied retroactively to the restitution order, restitution still would have been appropriate because conspiracy to commit robbery is a crime against property.  *See United States v. Robinson*, 697 F. App'x 732, 733 (2d Cir. 2017) (summary order).

---

[7] Nor does a subsequent change in the law invalidate Mr. Diaz's waiver. *See Elliott v. United States*, 2019 WL 6467718, at *4 (E.D.N.Y. Dec. 2, 2019) ("Courts in this circuit have consistently rejected § 2255 petitions and direct appeals when criminal defendants waived those challenges in their plea agreements, even when the law subsequently changed in those defendants' favor."); *Rodriguez v. United States*, 2019 WL 5552325, at *5 (D. Conn. Oct. 25, 2019) ("[T]he Second Circuit has found that a knowing and voluntary waiver of the right to collaterally attack a conviction or sentence bars arguments that arise due to subsequent changes in the law," and a "*Davis* claim is thus barred by the terms of the Plea Agreement.").

Accordingly, Mr. Diaz's third ground for relief is without merit, and would be denied even if it were not procedurally defective.

### E. Grounds Four and Five: Ineffective Assistance of Counsel for Failure to File a Direct Appeal

In his amended petition, Mr. Diaz alleges that Mr. Nooter failed to file a notice of appeal.  (Am. Pet. at 1.) Even if this claim were not procedurally barred, it finds no support in the record.

Mr. Diaz's unsworn assertion is contradicted by Mr. Nooter's detailed eight-page declaration, supported by a letter from Mr. Nooter to Mr. Diaz, in which he states that he advised Mr. Diaz of the "futility of filing any appeal of the sentence based on the fact that he had waived his appeal in his plea agreement and the sentence was within the range that was agreed-upon in our plea agreement."  (Nooter Second Decl. ¶ 7.)  Mr. Nooter informed Mr. Diaz that "if he decided at a later time to file an appeal that it had to be done within 14 days of sentence," that Mr. Diaz should contact him in time to file a notice of appeal, and "at no time did Mr. Diaz make such a request to" Mr. Nooter.  (*Id.* ¶¶ 7, 17.)

Mr. Nooter further states in his declaration that he received no communication from Mr. Diaz about filing an appeal until he received from the Court a letter, addressed to the

Court, in "late March or early April, 2014" from Mr. Diaz asking
to "discuss appeal issues [Mr. Diaz] would like to raise." (*Id*.
¶ 10.)  Mr. Diaz's letter, dated March 24, 2014, was dated well
after expiration of the 14 days he had to file a notice of
appeal following the entry of judgment on November 21, 2013.
Mr. Nooter submitted with his second declaration the letter he
sent back to Mr. Diaz, dated April 15, 2014, that stated that he
was not aware of any desire on the part of Mr. Diaz to file an
appeal. (*Id.* ¶ 11.)  Mr. Nooter states that he never received a
communication from Mr. Diaz in response. (*Id.* ¶ 12.)

Mr. Diaz's unsworn allegations are contradicted by Mr.
Nooter's detailed, sworn declaration.  In the "absence of any
other evidence to suggest that petitioner might actually have
suffered a deprivation of his constitutional right to effective
representation," *Lejhanec v. United States*, 1999 WL 1487594, at
*9 (E.D.N.Y. Nov. 29, 1999), Mr. Diaz's petition is denied.

Because the record does not support Mr. Diaz's claim
that he received ineffective assistance on the basis of
counsel's failure to file a notice of appeal, the fourth and
fifth claims are denied on the merits.

## Conclusion

For the reasons stated above, both of Mr. Diaz's
Section 2255 petitions are DENIED and dismissed in their
entirety.  Mr. Diaz's first petition is barred due to Mr. Diaz's

failure to file an appeal, and the amended petition is time-barred.  Moreover, Mr. Diaz knowingly and voluntarily waived his right to file a Section 2255 petition.  On the merits, Mr. Diaz has failed to state a plausible claim for ineffective assistance of counsel with respect to either of his former attorneys.

Because Mr. Diaz has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue.  28 U.S.C. § 2253(c); *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (discussing certificate of appealability standard); Rules Governing Section 2254 and 2255 Cases, Rule 11 ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").

The Clerk of Court is respectfully directed to enter judgment in favor of Respondent, serve Mr. Diaz with a copy of this Memorandum & Order and the judgment, note service on the docket, and close this case.

**SO ORDERED.**

Dated:    Brooklyn, New York
          June 19, 2020

                              _____/s/_____
                              Hon. Kiyo A. Matsumoto
                              United States District Judge